IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHANNON GONDOLA and MICHELLE | § | |
| HENSHAW, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:15-cv-411-M |
| | § | |
| USMD PPM, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant USMD PPM, LLC ("USMD" or "Defendant") has filed a Motion to Compel Discovery Responses [Dkt. No. 12] (the "MTC"), seeking an order under Federal Rule of Civil Procedure 37(a) to require Plaintiffs Shannon Gondola and Michelle Henshaw (collectively, "Plaintiffs") to adequately and fully respond to Defendant's First Set of Interrogatories and First Requests for Production and to pay Defendant's attorneys' fees incurred in preparing and filing this MTC.

Chief Judge Barbara M. G. Lynn referred Defendant's MTC to the undersigned United States magistrate judge for determination. *See* Dkt. No. 15.

Plaintiffs filed a response, *see* Dkt. No. 19, and Defendant filed a reply, *see* Dkt. No. 23. The Court heard oral argument on the MTC on May 26, 2016. *See* Dkt. No. 25.

For the reasons and to the extent explained at oral argument and below, the Court GRANTS in part and DENIES in part Defendant's Motion to Compel Discovery

Responses [Dkt. No. 12].[1]

## Background

This is an employment discrimination and retaliation case brought against USMD by its former employees Shannon Gondola and Michelle Henshaw. Gondola worked for USMD as an Office Administrator until USMD discharged her, and Henshaw worked for USMD as a Patient Services Manager in USMD's call center until USMD terminated her employment.

Gondola alleges that USMD discriminated against her based on her disability (an autoimmune disease), in violation of the Americans with Disabilities Act of 1990, as amended (the "ADA"), and the Texas Commission on Human Rights Act (the "TCHRA"). She further alleges that USMD interfered with her family medical leave and retaliated against her because she took family medical leave in violation of the Family Medical Leave Act (the "FMLA"). Gondola seeks damages for alleged past and future lost wages (salary and commissions), past and future medical and mental health costs, lost employment benefits, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages and other losses as well as her reasonable attorneys' fees.

Henshaw alleges that USMD discriminated against her based on her disability

---

[1] Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

(a hip replacement), in violation of the ADA and the TCHRA. She also alleges that USMD interfered with her family medical leave in violation of the FMLA. Henshaw seeks damages for alleged past and future lost wages (salary and commissions), past and future medical costs, lost employment benefits, the value of fringe benefits, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages and other losses as well as her reasonable attorneys' fees.

On December 3, 2015, Defendant served Plaintiffs with its First Set of Interrogatories and First Requests for Production, which included authorizations for Plaintiffs' signatures to enable Defendant to obtain third-party records that Defendant contends are necessary for its defense. Plaintiffs served their responses to these discovery requests on January 15, 2016, after Defendant granted them two discovery extensions.

In its MTC, Defendant contends that Plaintiffs' responses are inadequate and contain improper objections. Defendant asserts that Plaintiffs have failed to produce any documents in response to Defendant's production requests, have failed to execute or return the authorizations necessary for Defendant to obtain relevant third-party records, and have failed to state with specificity the basis for most of their objections, as required by Federal Rules of Civil Procedure 33(b)(3)-(4) and 34(b)(2)(B).

In response, Plaintiffs report that, on or about April 28, 2016, Plaintiffs produced amended discovery responses and over 150 documents relevant to Defendant's request and that, as such, several of Defendant's requests are moot. But

Plaintiffs contend that the parties have discovery disputes pertaining to Interrogatories Nos. 1, 5, and 9-12; Request for Production ("RFP") Nos. 3, 10, 25, 26, 32, 35, 43, 45, and 46; and IRS and Social Security authorizations, unemployment authorizations, employment and educational records authorizations, and authorizations for release of medical and psychotherapy records.

Defendant reply that Plaintiffs' amended responses fail to cure the deficiencies in several of their responses, that several of the documents that Plaintiffs agreed to produce by April 8, 2016 were not included in their tardy production, and that, although Plaintiffs' response to the MTC states that they will produce documents "on or before Friday, April 20, 2016," as of the reply's filing, Plaintiffs have not produced any documents promised in their Response. Defendant further asserts that, despite claiming that several issues raised in Defendant's MTC are moot because they "provided an amended response on April 28, 2016," there remain several discovery requests to which Plaintiffs have not fully responded.

## Legal Standards

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34 or to answer interrogatories under Federal Rule of Civil Procedure 33. *See* FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv).

The party resisting discovery must show specifically how each discovery request

is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). In response to a Rule 34 request, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C). And, in response to an interrogatory under Rule 33, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath"; "[t]he grounds for objecting to an interrogatory must be stated with specificity"; and "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." FED. R. CIV. P. 33(b)(3)-(4).

A party resisting discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.").

A party who has objected to a discovery request must, in response to a motion to compel, urge and argue in support of her objection to a request, and, if she does not, she waives the objection. *See Dolquist v. Heartland Presbytery*, 221 F.R.D. 564, 568 (D.

Kan. 2004); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

Federal Rules of Civil Procedure Rules 26(b) and 26(c) have been amended, effective December 1, 2015. Rule 26(b)(1) now provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

The amendments to Rules 26 and 34 govern in all proceedings in civil cases thereafter commenced and, insofar as just and practicable, in all proceedings then pending. The Court finds that applying the standards of Rules 26 and 34, as amended, in resolving Defendant's MTC is both just and practicable.

Further, for the reasons the Court has recently explained, the Court concludes that the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery discussed above. *See Carr v. State Farm Mutual Automobile Insurance Company*, 312 F.R.D. 459, 463-69 (N.D. Tex. 2015). Rather, just as was the case before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit proposed discovery that it determines

is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – and the court must do so even in the absence of a motion. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011). Thus, as amended, Rule 26(b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C).

But a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address – insofar as that information is available to it – the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The party seeking discovery, to prevail on a motion to compel, may well need to

make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing.

And the party seeking discovery is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests; is subject to Federal Rule of Civil Procedure 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: ... (B) with respect to a discovery request..., it is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f a certification violates this rule without substantial justification." FED. R. CIV. P. 26(g)(1)(B), 26(g)(3); *see generally Heller v. City of Dallas*, 303 F.R.D. 466, 475-77, 493-95 (N.D. Tex. 2014).

But the amendments to Rule 26(b) do not alter the basic allocation of the burden on the party resisting discovery to – in order to successfully resist a motion to compel – specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or that a discovery request would

impose an undue burden or expense or is otherwise objectionable. *See McLeod*, 894 F.2d at 1485; *Heller*, 303 F.R.D. at 483-93.

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A).

Federal Rule of Civil Procedure 37(a)(5)(B)-(C) further provides in pertinent part that, "[i]f the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C).

## Analysis

I.   <u>Interrogatory No. 1</u>

Interrogatory No. 1 asks Plaintiffs to "[i]dentify all persons (other than your attorneys or your attorneys' representatives) whom you believe have knowledge of facts relevant to your claims or damages and/or Defendant's defenses in this lawsuit and briefly describe the substance of the relevant knowledge you believe each person has." Plaintiffs take issue with this request as duplicative of their initial disclosure obligations under Federal Rule of Civil Procedure 26(a), to which Plaintiffs' response points, and Plaintiffs assert that "this interrogatory is inappropriate as it requests Plaintiffs to provide a sworn answer that would inherently be based on the speculation of what information other individuals have regarding their case." Dkt. 19 at 5. Plaintiffs' response nevertheless states that, "[w]hile many of the witnesses overlap, in light of compromise, Plaintiffs will provide an Amended Response separating potential witnesses for the two Plaintiffs on or before Friday, April 20, 2016." *Id.*

But Defendant's reply reports that Plaintiffs have not yet done so. At oral argument, Plaintiffs' counsel agreed to, and Plaintiffs are ordered to, serve an amended answer by **May 31, 2016**.

II.   <u>Interrogatory No. 5 and RFP No. 32</u>

Interrogatory No. 5 asks Plaintiffs to "[i]dentify any journals, notes, tape recordings, photographs, e-mails, or other such memoranda of any meetings, events, conversations or other communications concerning the factual allegations in your Complaint or in your answers to these Interrogatories including: (a) When, where, and

by whom each such note, e-mail, tape recording, photograph or other memorandum was made; (b) The identity of all persons who were present, a party to and/or witnessed each such meeting, conversation or communication; and (c) The identity of the person(s) having custody of each such note, tape recording, photograph or other memorandum."

Plaintiffs amended their answers to state that Henshaw has some recordings of meetings and conversations that she will produce and that Gondola made some notes in a journal surrounding the events in question that she would produce, although, at oral argument, Plaintiffs' counsel corrected the representation as to Gondola, noting that the journal is in fact a third party's and not within Plaintiffs' possession, custody, or control.

Defendant reports that, to date, Plaintiffs have not produced any journal entries or recordings and have not specified whether they are withholding any information based on their objections.

RFP 32 asks for "[a]ll diaries or notes maintained by you relating to your mental state, your daily activities and thoughts, or your plans and thoughts about your future" and provides: "Please limit your response to January 1, 2010, to the present." Plaintiffs provided an amended response agreeing to produce non-privileged, responsive documents within their possession, custody, or control, at a mutually agreeable time and place. But Defendant reports in reply that Plaintiffs still have not produced the redacted fee agreements as promised.

Plaintiffs' counsel confirmed at oral argument that Plaintiffs are not withholding

any responsive information or documents based on their objections.

As the Court discussed with counsel at oral argument, Plaintiffs must produce the responsive documents and serve any amended interrogatory response by **June 3, 2016**.

III.    Interrogatory Nos. 9, 10, & 11 and RFP No. 35

Counsel reported at oral argument that the parties reached an agreement as to Interrogatory No. 11 that obviates the need for any decision on that request.

Interrogatory No. 10 asks Plaintiffs to, "[i]f you have sought employment from or been offered employment with anyone other than Defendant since October 1, 2013, identify each job for which you applied, including the identity of the prospective employer, the date on which you applied for the job and the position for which you applied, each person who offered you a job, the job position offered, the rate of pay offered, whether you accepted or declined the offer(s) of employment and, if applicable, your reasons for declining the offer(s) of employment."

Plaintiffs report in their response to the MTC that they have already produced some documents but will also provide an authorization for unemployment records on or before Friday, April 20, 2016. At oral argument, Plaintiffs' counsel reported that Henshaw has since declined to sign the Unemployment Authorization. The Court determines that requiring this authorization is appropriate under Rule 34 and proportional to the needs of the case. As discussed with counsel at oral argument, the Court overrules Plaintiffs' objections and orders Henshaw to sign the Unemployment Authorization by **June 3, 2016**. This should fully address any remaining concerns with

Interrogatory No. 10, where Gondola has already provided Defendant with a signed Unemployment Authorization.

Interrogatory No. 9 and RFP No. 35 seek information regarding Plaintiffs' prior and subsequent employment. Interrogatory No. 9 asks Plaintiffs to "[i]dentify each employer for whom you have worked for the past ten (10) years, including your dates of employment, job position, whether you left that job voluntarily or involuntarily and the specific reason why your employment was terminated or why you left that job," and RFP No. 35 seeks "[a]ll personnel records from any employers for whom you have worked since your separation from Defendant until the time of trial."

Defendant contends that, even though Plaintiffs provided some information in response to Interrogatory No. 9, their response remains deficient, where Gondola fails to state the name of two employers or list her dates of employment for all three employers, and, for two of the employers, she does not state the specific reason(s) why her employment was terminated or why she left, and where Henshaw fails to state the name of her current employer. At oral argument, Defendant's counsel reported that Plaintiffs have now provided the names of all but their current employers, and Defendant argues that Plaintiffs' contention that the actual names of their current employers have no relevance to whether they have mitigated their damages is misplaced.

As to RFP No. 35, Defendant contends that Plaintiffs' objection that the request is overly broad is misplaced, as it requests specific documents from specific entities – those for whom Plaintiffs have worked since their separation from Defendant – and

because Plaintiffs' prior and subsequent employment records are directly related to Plaintiffs' alleged damages and the reasonableness of any attempt to mitigate those alleged damages. Defendant asserts that, although Plaintiffs agreed to produce redacted pay stubs and W-2s from their subsequent employers showing only Plaintiffs' dates of employment, position, and rate of pay, they refuse to produce personnel records or anything indicating the names of their employers and to execute and return the Employment Authorization. And, according to Defendant, limiting RFP No. 35 to redacted W-2s and pay stubs is insufficient because it would deprive Defendant of information it needs to defend itself in this lawsuit, including, for example, employment applications which may include representations as to Plaintiffs' availability and ability to work and pertinent medical conditions/disability, complete earnings information such as bonus structure and future salary increases, comparable duties, and information regarding whether Plaintiffs have engaged in similar conduct at their subsequent employer. Defendant asserts that that is all relevant to Plaintiffs' claims for back and front pay and Defendant's after-acquired evidence defense.

With regard to RFP No. 35, as the Court discussed with counsel at oral argument, the Court will overrule Plaintiffs' objections and order Plaintiffs to, by **June 10, 2016**, either (a) sign a limited authorization for the following employment records for any employment after their termination by Defendant or (b) provide these records with a signed certificate from a custodian of records for any of the documents: (1) salary records; (2) benefits records; (3) documents reflecting Plaintiffs' dates of employment and the circumstances for Plaintiffs' leaving or being terminated from any

employment; and (4) any employment applications submitted by Plaintiffs that discuss their reasons for leaving their employment with Defendant or their disabilities or needs or requests for accommodations or that list their demands or requests for a salary or salary range.

As to Interrogatory No. 9, as the Court discussed with counsel at oral argument, the Court overrules Plaintiffs' objections and orders that Plaintiffs must, by **June 3, 2016**, provide the names of all of their employers after their termination by Defendant. But the Court further orders that Defendant and its counsel may not use this information for any purpose outside of this litigation and may not, absent a further court order, contact Plaintiffs' current employers.

IV.    <u>Interrogatory No. 12</u>

Interrogatory No. 12 asks Gondola to "[i]dentify any wages, income, gifts, loans or other payments of money you have received from any source other than Defendant since your separation from Defendant (including but not limited to any earned income, unemployment compensation, workers' compensation benefits, insurance payments and social security benefits)" and to "specify the amount of any such payments, the source of any such payments, and the date(s) upon which you received any such payments."

Gondola provided an amended response, but Defendant contends that it is incomplete because it does not identify other sources of income or financial support, including, but not limited to, unemployment compensation benefits, retirement benefits, 401(k) benefits, social security benefits, borrowing money from relatives and

friends, and educational loans, which Defendant asserts are all relevant to Gondola's alleged damages and her duty to mitigate and, therefore, discoverable. Defendant notes that Gondola's amended answer states that she limits her response to employment-related "income" as opposed to passive or other "income, gifts, loans."

The Court agrees with Defendant that this is an appropriate area of inquiry, overrules Gondola's objections, and orders Gondola to, by **June 6, 2016**, serve an amended answer that fully answers Interrogatory No. 12.

V.     RFP Nos. 1, 2, 4, 6, 7, 8, 9, 11, 12, 14, 15, 16, 18, 19, 20, 31, & 34

In response to these requests, Plaintiffs state that, "[s]ubject to and without waiving the foregoing general and specific objections, ... she will produce non-privileged, responsive documents within her possession, custody, or control, at a mutually agreeable time and place." Defendant's MTC reports that, to date, Plaintiffs have failed to produce any documents to Defendant as agreed in response to these requests and have not provided Defendant with a privilege log as requested.

At oral argument, Plaintiffs' counsel represented that all documents responsive to these requests and in Plaintiffs' possession, custody, or control have been produced, that nothing has been withheld based on any objections, and that no documents have been withheld as privileged or work product, such that no privilege log is required under Federal Rule of Civil Procedure 26(b)(5).

That resolves the MTC as to these requests. But the Court cannot let this pass without noting that it has previously explained, "responding to interrogatories and documents requests 'subject to' and/or 'without waiving' objections is manifestly

confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure"; "this manner of responding to a document request or interrogatory leaves the requesting party guessing and wondering as to the scope of the documents or information that will be provided as responsive will be"; "outside of the privilege and work product context..., responding to a document request or interrogatory 'subject to' and 'without waiving' objections is not consistent with the Federal Rules or warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; "a responding party has a duty to respond to or answer a discovery request to the extent that it is not objectionable" and "must describe what portions of the interrogatory or document request it is, and what portions it is not, answering or responding to based on its objections and why"; "if the request is truly objectionable – that is, the information or documents sought are not properly discoverable under the Federal Rules – the responding party should stand on an objection so far as it goes"; and, "as a general matter, if an objection does not preclude or prevent a response or answer, at least in part, the objection is improper and should not be made." *Carr*, 312 F.R.D. at 470 (quoting *Heller*, 303 F.R.D. at 487-88 (internal quotation marks omitted)).

As noted above, "[o]bjections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections. Amended Federal Rule of Civil Procedure 34(b)(2) effectively codifies this requirement, at least in part: 'An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part

and permit inspection of the rest." *OrchestrateHR, Inc. v. Trombetta*, ___ F. Supp. 3d.

____, No. 3:13-cv-2110-L, 2016 WL 1555784, at *26 (N.D. Tex. Apr. 18, 2016) (citing

*Heller*, 303 F.R.D. at 483; quoting FED. R. CIV. P. 34(b)(2)(C)). And amended Federal

Rule 34(b)(2)(B) correspondingly requires that, "[f]or each item or category, the

response must either state that inspection and related activities will be permitted as

requested or state with specificity the grounds for objecting to the request, including

the reasons." FED. R. CIV. P. 34(b)(2)(B).

Defendant's MTC provides a prime example of the cost of responding subject to

and without waiving objections and without a further explanation of what part of the

request the responding party is objecting and therefore not responding to. For all the

reasons that the Court explained in *Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex.

2014), and where amended Rule 34(b)(2) now expressly imposes very specific

requirements, Plaintiffs' objections and responses "[s]ubject to and without waiving the

foregoing general and specific objections" were improper and necessitated Defendant's

including more in its MTC than it would have otherwise been required to raise.

VI.   <u>RFP No. 3</u>

RFP No. 3 seeks "[a]ll documents, letters, memoranda, correspondence, notes of

telephone conversations, contracts or other documents and things in your possession,

custody or control pertaining to Defendant that were taken, retained or removed from

Defendant's facilities." Plaintiffs have agreed to produce all relevant documents in

their possession, although they also say that they stand by their objections, and, at oral

argument, Plaintiffs' counsel represented that the production is complete and that

nothing has been withheld based on any objections.

Again, the Court notes that, while this resolves the MTC as to RFP No. 3, Plaintiffs' standing by objections and yet producing all responsive documents only serves to create confusion and uncertainty. As the Court has explained, "a responding party has a duty to respond to or answer a discovery request to the extent that it is not objectionable" and "must describe what portions of the interrogatory or document request it is, and what portions it is not, answering or responding to based on its objections and why," and, "if the request is truly objectionable – that is, the information or documents sought are not properly discoverable under the Federal Rules – the responding party should stand on an objection so far as it goes." *Heller*, 303 F.R.D. at 487, But, "if an objection does not preclude or prevent a response or answer, at least in part, the objection is improper and should not be made." *Id.* And, although the Court does not believe that Rule 26(g)(3) is implicated under the particular circumstances here, and the Court appreciates counsel's efforts to compromise and resolve discovery disputes by agreement, the Court has warned that, "[t]o make such an objection in the face of these considerations is to engage in the abusive practice of objecting to discovery requests reflexively – but not reflectively – and without a factual [or legal] basis that Rule 26(g) was enacted to stop." *Id.* (internal quotation marks omitted).

VII.   <u>RFP No. 10</u>

RFP No. 10 seeks "[a]ll documents regarding, concerning or otherwise relating to any statement you contend constitutes an admission of Defendant with respect to the causes of action asserted in the Complaint."

Plaintiffs stand on their objections that this request seeks attorney work product because it asks Plaintiffs to produce documents based on what they believe constitutes an admission of Defendant and that the request seeks documents and information that are either within Defendant's exclusive possession or control in its files or that are equally or more readily available to Defendant and that the request is therefore unduly burdensome. But, in light of compromise, Plaintiffs also respond that Defendant can rest assured that Plaintiffs are not withholding any documents in which Defendant has "admitted" to discrimination and/or retaliation.

In reply, Defendant contends that Plaintiffs' objection to "admission" being undefined is waived because it was raised for the first time in response to the MTC and that admissions by Defendant or any of its representatives can never constitute material prepared or mental impressions developed by Plaintiffs' counsel in anticipation of litigation.

The Court determines that Plaintiffs' objection to the term "admission" is untimely and waived; that, properly understood, this interrogatory does not seek protected work product; and that Plaintiffs must produce any responsive documents that Plaintiffs would consider an admission within the meanings attributed to that term in the Federal Rules of Evidence by **June 6, 2016**.

VIII.   RFP Nos. 25, 45, & 46

RFP Nos. 25, 45 (Gondola), and 46 (Henshaw) ask Plaintiffs to produce "[a]ll documents which evidence, describe, concern, or otherwise relate to the allegations in your Complaint" and "[a]ll documents not previously produced that support, contradict,

or otherwise relate in any way to any of the allegations you have made in this lawsuit."

Plaintiffs stand on their objections that these requests are vague, ambiguous, overly broad, and fail to specify the requested documents with sufficient particularity and also that RFP Nos. 45 and 46 seek irrelevant information, are overbroad, and are not reasonably calculated to lead to the discovery of admissible evidence. In their response, Plaintiffs explain that, if overbroad requests like this for "all documents" were permissible, there would be no need for tailored discovery requests, as both parties would merely requests "all" relevant documents, and that it would further require Plaintiffs to decipher exactly what Defendant is requesting. Plaintiffs also contend that these requests are not limited by a reasonable restriction on time and category and would require Plaintiffs to produce over 20 years of documentation without specification.

Defendant replies that the requests are not overly broad, as they request specific documents directly related to Plaintiffs' allegations in this lawsuit; that the requests are limited to the time period of Plaintiffs' employment with Defendant and to the events that give rise to their allegations and seek documents that are both relevant and discoverable; and that documents and materials that Plaintiffs are using to rely on to support their allegations are relevant to Defendant's defenses and Plaintiffs' alleged damages and duty to mitigate.

The Court sustains Plaintiffs' objections in part to these requests – which are akin to so-called "blockbuster" interrogatories – and will order Plaintiffs only to respond to RFP Nos. Nos. 25, 45, and 46 by producing, by **June 10, 2016**, any

documents not previously produced that would be covered by Federal Rule of Civil Procedure 26(a)(1)(A)(ii)'s requirement that a party disclose "a copy ... of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." FED. R. CIV. P. 26(a)(1)(A)(ii).

IX.   <u>RFP No. 26</u>

RFP No. 26 asks for "[a]ny agreement between you and any attorney evidencing your obligation, if any, to pay attorneys' fees in connection with this lawsuit." Plaintiffs objected to the extent that this request seeks privileged attorney-client communications or attorney work product but committed that, subject to and without waiving those objections, each Plaintiff will produce a redacted copy of their fee agreement with her attorney. Plaintiffs also assert for the first time in response to the MTC that any fee agreement is not relevant because the award of attorneys' fees is not a matter that is relevant to the trial on the merits of this case and is made by the Court only after the plaintiff prevails and because, even when that occurs, the terms of the agreement between the plaintiff and their counsel are not factors in the Court's consideration of that award.

Defendant reports in reply that Plaintiffs still have not produced the redacted fee agreements as promised. The Court overrules Plaintiffs' objections to the extent that they should produce copies of their fee agreements that redact any privileged communications or protected work product. At oral argument, Plaintiffs' counsel agreed to, and Plaintiffs are ordered to, produce the redacted fee agreements by **May**

**31, 2016**.

X.    Authorizations (RFP Nos. 37-42)

A.    IRS, Social Security earnings, and unemployment authorizations

At oral argument, counsel reported that Gondola has provided Defendant with signed unemployment authorizations, and the Court addressed the requirement for a signed unemployment authorization from Henshaw above.

Plaintiffs assert that Defendant does not need Plaintiffs' tax returns for any proper purpose where Plaintiffs have agreed to produce W-2s and pay stubs from their subsequent employers. Defendant replies that Plaintiffs seek monetary, compensatory damages in this case and that Plaintiffs' IRS and Social Security records therefore are discoverable. Defendant contend that it is not required to take Plaintiffs' word that they have not drawn social security and that W-2s and pay stubs alone are insufficient because they do not include other possible sources of income Plaintiffs could have received such as 1099 income, income from stock dividends, stock sales, sale of assets, real estate, gifts from friends or family, or payments from a trust – all of which relate to Plaintiffs' claim for back and front pay and their duty to mitigate their damages. Without the requested information, according to Defendant, it has no verifiable way of discerning with accuracy the amount of income that Plaintiffs earned subsequent to their employment with Defendant or the sources of that income.

Tax returns are neither privileged nor undiscoverable. *See Rafeedie v. L.L.C., Inc.*, No. A-10-CA-743, 2011 WL 5352826, at *2 (W.D. Tex. Nov. 7, 2011) (citing *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995)). They do, however, contain

sensitive information and should be produced only after a showing of relevance by the party seeking production, after which "the burden shifts to the party opposing production to show other sources exist from which the information contained in the returns may be readily obtained." *Rafeedie*, 2011 WL 5352826 at *2; *see also LeGrand*, 43 F.3d at 172 (evaluating whether tax returns were properly ordered to be produced under a two-part test wherein the party seeking production must show relevance and, then, the burden shifts to the opposing party to show other sources exist from which the information contained on the tax returns may be readily obtained); *Williams v. United States Envtl. Servs., LLC*, No. CV 15-168-RLB, 2016 WL 684607, at *2 (M.D. La. Feb. 18, 2016) ("Tax returns are highly sensitive documents and the court will only compel their production where the requesting party demonstrates both: (1) that the tax information is relevant to the subject matter of the action; and (2) that there is a compelling need for the information because the information contained in the tax returns is not otherwise readily obtainable through alternative forms of discovery, such as depositions or sworn interrogatory answers." (internal quotation marks omitted)); *E.E.O.C. v. Princeton Healthcare Sys.*, No. 10-4126 (PGS), 2012 WL 1623870, at *10 (D.N.J. May 9, 2012) ("Whether tax returns are discoverable turns on whether (1) the tax returns are relevant to the subject matter of the action ... and [whether] (2) there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable' and '[t]he party seeking the discovery at issue bears the burden of establishing its relevance ... while the party resisting discovery bears the burden of establishing other sources for the information.'" (citations omitted)); *Haas*

*v. Kohl's Dep't Store, Inc.*, No. 08-cv-2507, 2009 WL 2030567, at *1 (E.D. Pa. July 7, 2009) (noting that courts apply a two-part test in evaluating whether to compel production of tax returns: (1) are the tax returns relevant to the litigation, and if so, (2) whether the information can be obtained from other sources).

Because each Plaintiff is seeking compensatory damages for lost and unpaid wages, their tax returns are relevant to the litigation. *See Williams*, 2016 WL 684607, at *2. Defendant asserts that it needs copies of Plaintiffs' tax returns to determine whether Plaintiffs had additional employment or earned additional, non-wage income that Plaintiffs have not disclosed.

As a general matter, that information can be gleaned from other sources, such as 1099s. *See Jackson v. Unisys, Inc.*, No. 08-3298, 2010 WL 10018, at *2-3 (E.D. Pa. Jan. 4, 2010) ("As W-2s do not contain 'substantial irrelevant' confidential information such as investment income, spousal income, etc., they are a preferable form of discovery.' In the interest of balancing Plaintiff's privacy interests against the Federal Rules' call for broad discovery, the Court finds that Plaintiff's W-2s will suffice for the information sought ... in the income tax returns." (citations omitted)). And the Court notes the path taken in other courts, wherein the moving party was instructed to return to the court if it obtains evidence indicating that information, that is both relevant to the case and difficult to find outside of income tax returns, exists. *See Haas*, 2009 WL 2030567 at *1; *Aliotti v. Vessel SENORA*, 217 F.R.D. 496, 498 (N.D. Cal. 2003) ("[I]f after employment of these alternative less intrusive means, Defendant has reason to believe that the information provided by Plaintiff is untruthful or incomplete,

the Court will considered a renewed motion on shortened time to require disclosure of the some or all of the tax returns. However, any such motion will have to be based on an objective showing of cause, not sheer speculation.").

As the Court discussed with counsel at oral argument, the Court will sustain Plaintiffs' objections in part and require Plaintiffs to, by **June 10, 2016**, produce to Defendant either a signed IRS authorization form or – in lieu of allowing this means of access to their tax returns – a copy of any 1099s for income after their termination by Defendant and a copy of any documents reflecting any rental income, income from any self-employment, or distributions from any 401(k) or other retirement or investment account after their termination by Defendant.

As the Court further discussed with counsel at oral argument, the Court will require Plaintiffs to, by **June 6, 2016**, produce to Defendant either a signed Social Security authorization form or an amended answer to Interrogatory No. 12 that states whether each Plaintiff has applied for disability insurance benefits and/or supplemental security income ("SSI") benefits, whether each Plaintiff received any disability insurance benefits and/or SSI benefits, and whether each Plaintiff has applied for and been denied disability insurance benefits and/or SSI benefits.

B.     Employment and educational records authorization

The Court addressed above the requirements for Plaintiffs to sign a limited employment authorization or produce documents in lieu of such an authorization.

C.     Authorizations for release of medical and psychotherapy records

At oral argument, counsel reported that Gondola, but not Henshaw, has

provided Defendant with signed medical and psychotherapy authorizations. As the Court discussed with counsel at oral argument, the Court will overrule Plaintiffs' objections to providing such an authorization and order Henshaw to, by **June 10, 2016**, produce to Defendant either signed medical and psychotherapy authorizations or, alternatively, produce all of her responsive medical and psychotherapy records and provide Defendant with certificates from the custodians of record for all medical and psychotherapy records that she has produced herself.

Counsel also noted at oral argument the need for an appropriate protective order to cover Plaintiffs' confidential records. The protective order must comply with the Health Insurance Portability and Accountability Act ("HIPAA") and, in particular, with the requirements of 45 C.F.R. § 164.512(e) and, among other things, provide that the parties are prohibited from using or disclosing any protected health information for any purpose other than this litigation for which such information was requested and that Defendant's counsel will return to Plaintiffs for destruction the protected health information (including all copies made) at the end of the litigation or proceeding. The Court orders Plaintiffs' counsel and Defendant's counsel to negotiate an appropriate confidentiality agreement or protective order to cover confidential information, including protected health information, and to submit to the Court, by **June 6, 2016**, an agreed protective order for the Court's consideration or a notice of any confidentiality agreement into which the parties have entered.

XI.     <u>RFP No. 43</u>

RFP No. 43 seeks information relating to Plaintiffs' activity on social networking

sites and specifically requests as follows:

With respect to the social networking sites, public blogs, e-mail or web-based communication services (i.e., instant messages, chat rooms, web logs ("blogs")) identified in response to Defendant's Interrogatory No. 15, please produce electronic copies of:

(a) Your complete profile on Facebook, MySpace, LinkedIn, Twitter, Classmates, and all others (including all updates, changes, or modification to your profiles) and all status updates, messages, wall comments, cause(s) joined, groups joined, activity streams, blog entries, details, blurbs, comments, and applications (including, but not limited to, "How well do you know me," the "Naughty Application," "SuperPoke" and similar others) which support, tend to support, refute, tend to refute, or relate to your claims or damages alleged in this lawsuit. With respect to any Facebook account you may have, we request a copy of the Facebook account as provided through the "Download Your Information" functions. See below.

(b) All photographs or videos posted by you, by anyone on your behalf, or photographs which you have been "tagged" on Facebook, MySpace, or Instagram which support, tend to support, refute, tend to refute, or relate to your claims or damages alleged in this lawsuit.

(c) Copies of your emails, email forwards, replies to emails, instant messages, chat room posts, web log/blog entries or comments that concern, that tend to support, refute, tend to refute, or relate to your claims or damages alleged in this lawsuit including any information regarding stressors that would cause and/or exacerbate an emotional injury including, but not limited to, family issues, financial issues, health issues, and others.

To the extent electronic copies are not available, please provide the documents in hard copy form. With respect to any Facebook account you may have, there is an application associated with some accounts that will let you download information you have posted, entitled "Download Your Information," that allows you to get a copy of the data you have put on Facebook. To do this, log into your Facebook account using your email and personal password. Once you are on your home page, you should see a link in the top right corner entitled "Home." Click on the down arrow on the right side of the word "Home" and a drop down menu will appear. From there, select "Account Settings." Then click "Download a copy of your Facebook data." A screen will appear with a large green box entitled, "Start my archive." Click "Start my archive." Next you will see a text box entitled, "Request My Download." Click "confirm." Facebook will e-mail you within 24-28 hours when your archive is available to be downloaded and printed.

Plaintiffs stand on their objections that this request is vague, ambiguous and overly broad and fails to specify the requested documents with sufficient particularity; that this request seeks irrelevant information and is not reasonably calculated to lead to the discovery of admissible evidence; and that this request is limited neither by proper time period nor by scope of subject-matter and is an invasion of Plaintiffs' privacy rights.

Defendant replies that Plaintiffs' activity on social networking sites is both discoverable and highly relevant to the claims and defenses in this lawsuit and will reveal Plaintiffs' state of mind at the time of postings. Defendant also responds that the request is not overbroad, as it is limited to Plaintiffs' activity on social networking sites regarding the allegations in their Complaint.

But, as the Court discussed with counsel at oral argument, RFP No. 43 is not, by its terms, so limited, and the Court will sustain Plaintiffs' objections in part and require that Plaintiffs respond only to a more limited request.

"Generally, [social networking site] content is neither privileged nor protected by any right of privacy." *Johnson v. PPI Tech. Servs., L.P.*, No. 11-2773, 2013 WL 4508128, at *1 (E.D. La. Aug. 22, 2013); *see also Moore v. Wayne Smith Trucking Inc.*, No. Civ. A. 14-1919, 2015 WL 6438913, at *2 (E.D. La. Oct. 22, 2015) ("It is settled that information on social media accounts, including Facebook, is discoverable."). But neither do courts generally endorse an extremely broad request for all social media site content. *See Moore*, 2015 WL 6438913, at *2. Court have held that ordering a party to permit access to or produce complete copies of his social networking site accounts

would permit his opponent to cast too wide a net and sanction an inquiry into scores of quasi-personal information that would be irrelevant and non-discoverable. *See id.* Court have observed that "[a] party is no more entitled to such unfettered access to an opponent's social networking communications than it is to rummage through the desk drawers and closets in his opponent's home." *Id.* (internal quotation marks omitted).

Rather, for example, in a case involving a fatal accident involving a truck and a motorcycle, another judge in this circuit limited a request to postings or messages made after and related to the accident and limited to four months following the date of the accident. *See id.* at *3. And, even more pertinent to the factual allegations here, courts have observed that, where a defendant seeks extremely broad social network site discovery because a plaintiff has placed both his physical and mental condition at issue, this "placing at issue" makes some of a plaintiff's social networking site information discoverable but "that rather predictable decision by Plaintiff cannot and does not justify the broad discovery sought by [the defendant]." *Farley v. Callais & Sons LLC*, No. Civ. A. 14-2550, 2015 WL 4730729, at *4 (E.D. La. Aug. 10, 2015); *accord Johnson*, 2013 WL 4508128, at *2 ("Simply placing their mental and physical conditions at issue is not sufficient to allow PPI to rummage through Johnson's or Croke's social media sites. Almost every plaintiff places his or her mental or physical condition at issue, and this Court is reticent to create a bright-line rule that such conditions allow defendants unfettered access to a plaintiff's social networking sites that he or she has limited from public view.").

As the Court discussed with counsel at oral argument, the Court determines

that RFP No. 43 seeks too wide a scope of materials, and the Court orders Plaintiffs' counsel and Defendant's counsel to meet and confer on a more limited scope for RFP No. 43, to include information, messages, and postings on social networking sites relevant to the claims and defenses in this case, such as any mention of Defendant (by name or otherwise) by Plaintiffs, any discussion of the termination of their employment by Defendant, any discussion of Plaintiffs' job searches after leaving Defendant, and any effects that their termination by Defendant had on Plaintiffs. The parties must file a joint status report by **June 3, 2016** reporting the results of their efforts to reach agreement and what, if any, disagreements as to a more limited scope for RFP No. 43 remain for the Court's determination. If the parties reach an agreement as to the modified scope of RFP No. 43, they must also submit an agreed proposed supplemental order to Horan_Orders@txnd.uscourts.gov by **June 3, 2016**.

XII.    Request for Award of Expenses

As noted above, Rule 37(a)(5)(C) provides that, if a motion to compel is granted in part and denied in part, "the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(C).

The Court determines that Defendant attempted in good faith to obtain the discovery at issue in its MTC without court action before filing. The Court will grant Plaintiffs until **June 10, 2016** to file a response to this order to explain why the Court should not require Plaintiffs or Plaintiffs' counsel to pay Defendant, as required by Rule 37(a)(5), the expenses, including attorneys' fees, that Defendant incurred in filing,

briefing, and arguing its MTC. In the response, Plaintiffs should fully explain whether their nondisclosure, responses, or objections at issue were substantially justified and whether other circumstances make an award of expenses under Rule 37(a)(5) unjust.

Defendant may file a reply in support of its request for an award of their reasonable expenses by **June 24, 2016**.

The Court defers ruling on Defendant's request for an award of its reasonable expenses under Rule 37(a)(5) pending this additional briefing.

### Conclusion

For the reasons and to the extent explained at oral argument and above, the Court GRANTS in part and DENIES in part Defendant's Motion to Compel Discovery Responses [Dkt. No. 12].

SO ORDERED.

DATED: May 27, 2016

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE